Frank A. SCHULER, Jr., Appellant,

v.

**UNITED STATES of America, Department of State, et al.**

No. 78–1797.

United States Court of Appeals, District of Columbia Circuit.

Argued En Banc April 15, 1980.

Decided May 23, 1980.

Bernard Fensterwald, Jr., Washington, D.C., with whom Marc Feldman, Washington, D.C., was on the brief, for appellant.

Freddi Lipstein, Atty., Dept. of Justice, Washington, D.C., with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U.S. Atty., and Barbara L. Herwig, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellees. John A. Terry, E. Anne McKinsey, Peter E. George, and Ann S. DuRoss, Asst. U.S. Attys., Washington, D.C., also entered appearances for appellees.

Before WRIGHT, Chief Judge, and McGOWAN, TAMM *, ROBINSON, Mac-KINNON, ROBB, WILKEY, WALD, MIKVA and EDWARDS, Circuit Judges.

Opinion for the court *per curiam.*

Concurring opinion filed by Circuit Judge MacKINNON.

Concurring opinion filed by Circuit Judge EDWARDS in which Circuit Judge WALD joins.

PER CURIAM:

Appellant Frank A. Schuler seeks reversal of the District Court's dismissal of his complaint, which requested declaratory reversal of his allegedly improper termination by the State Department, correction of his State Department personnel file, and an award of monetary benefits lost due to the Government's allegedly improper treatment of him between 1944 and 1953. The facts of the case are set out at length in the vacated panel opinion in *Schuler v. United States,* D.C. Cir. No. 78–1797, September 7, 1979.[1] We now affirm the judgment of the District Court.

---

* Circuit Judge TAMM did not participate in the decision in this case.

1. The appendix to this opinion consists of Parts I and II of the vacated panel opinion (with footnotes deleted) which state the facts of Schuler's claim.

Schuler has stated essentially two legal grounds for relief: The Foreign Service Act of 1946, as amended, 22 U.S.C. § 1037a(1) (1976), and the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1976). Neither ground supports his claim.

[1, 2] Schuler has pursued his administrative claim solely under 22 U.S.C. § 1037a(1)(C), which applies to former employees other than those involuntarily retired under the Department's selecting-out procedures. Thus any rights that might exist under 22 U.S.C. § 1037a(1)(B) are not at issue here. 22 U.S.C. § 1037a(1)(C), in relevant part, reads:

> [W]hen the grievant is a former officer or employee * * *, "grievance" shall mean a complaint that an allowance or other financial benefit has been denied arbitrarily, capriciously, or contrary to applicable law or regulation[.]

The phrase "financial benefit" would appear to refer to salary, allowances, pension rights, or other benefits incidental to the grievant's former employment. The heart of Schuler's claim is an allegation of wrongful separation and maintenance of false and damaging records. Though Schuler seeks various financial benefits as incidents of this claim, the Grievance Board could grant him those benefits only if it held his separation wrongful and reinstated him—which it has no power to do under the statute. Thus, the term "financial benefit" cannot be so broadly construed as to encompass Schuler's claims.

Schuler's invocation of the Federal Tort Claims Act fails most clearly on statute of limitations grounds. His claim may suffer other very serious flaws. Though he may characterize it as alleging the tort of negligent maintenance of employment records, the claim falls extremely close to the language of 28 U.S.C. § 2680(h) (1976), which excludes from the coverage of the Federal Tort Claims Act claims of "libel, slander, misrepresentation, deceit, or interference with contract rights." Moreover, since the claim essentially arose no later than 1953, if we were to reverse the District Court's dismissal we might have to strain the doctrine of equitable tolling and hold that the statute of limitations on the tort claim was tolled until 1974 when the passage of the relevant provisions of the Freedom of Information Act and the Privacy Act, 5 U.S.C. §§ 552, 552a (1976), gave him access to the information on which he bases his claims. But we need not resolve those issues. Even if we believed that the negligent maintenance claim falls outside the exclusion language of 28 U.S.C. § 2680(h), and even were we to invoke the equitable tolling doctrine in Schuler's favor, the statute of limitations would bar the claim.

The relevant statutory provision of the Federal Tort Claims Act reads:

> (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b) (1976). Though the section is not happily drafted, common sense and the legislative history tell us that it requires the claimant *both* to file the claim with the agency within two years after accrual of the claim and then to file a complaint in the District Court within six months after the agency denies the claim. Were we to read the "or" in the section as really intending the disjunctive, a claimant who filed a claim with the agency within two years would then be able to bring it to a District Court at any remote future time after the agency denied him relief. The only possible limit on such an action would be the preceding subsection, 28 U.S.C. § 2401(a) (1976), which establishes a general six-year statue of limitations for claims against the United States. But relying on that provision makes little sense, since it was clearly intended as a *general* statute of limitations, to be superseded for tort claims by the highly *specific* language of Section 2401(b).

Moreover, the legislative history of Section 2401(b) clearly shows that Congress intended a claimant to surmount *both* barriers. The Report of the House Committee, H.R. Rep. No. 1532, 89th Cong., 2d Sess. 5 (1966), states:

*Section 7*

This section amends the provisions of section 2401, the limitations section, to conform the section to the amendments added by the bill. The amendments have the effect of simplifying the language of section 2401 to require that a claimant must file a claim in writing to the appropriate Federal agency within 2 years after the claim accrues, *and to further require* the filing of a court action within 6 months of notice by certified or registered mail of a final decision of the claim by the agency to which it was presented.

(Emphasis added.) The Senate Report, S. Rep. No. 1327, 89th Cong., 2d Sess. 1 (1966), repeats this statement and states under the heading "PURPOSE":

The purpose of the bill is to provide authority to the heads of Federal agencies for administrative settlement of tort claims against the United States. Settlements for more than $25,000 must have the prior written approval of the Attorney General or his designee. A claim would have to be filed with the agency concerned within 2 years after it accrues *and* any tort action must be brought within 6 months after final denial of the administrative claim. The bill would increase the limits for attorneys' fees in cases of administrative settlement from 10 to 20 percent and from 20 to 25 percent of amounts paid after suit is begun.

(Emphasis added.)

Schuler passed the first limitations barrier to invocation of the Federal Tort Claims Act by filing a claim with the Foreign Service Grievance Board within two years of the purported late accrual of his claim. However, he failed to pass the second since he filed his complaint in the District Court more than six months after the Foreign Service Grievance Board denied the claim.

The judgment of the District Court is therefore

*Affirmed.*

APPENDIX

I

Because the District Court granted the Government's motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, the only factual allegations in the record before us appear in appellant's complaint, and we must presume that those uncontradicted allegations are true. Consequently, our account of the events leading to this suit is drawn from the complaint.

Between 1930 and 1941 appellant was a foreign service officer with a specialty in Japanese language and affairs. He asserts that on September 13, 1941 a memorandum signed by Schuler and five associates was circulated at the State Department. The memorandum reportedly called for a reevaluation of our policy toward Japan and warned of that nation's hostility toward us. The chief of the Division of Far Eastern Affairs strongly reprimanded the authors of the document and demanded an apology, which Schuler says he did not offer. On November 7, 1941 he was transferred to the Caribbean to establish a consulate on the island of Antigua.

Schuler remained on Antigua until 1943 despite his requests for an assignment that would draw on his language training and background in the national effort against the Japanese. After spending a year in our consulate in Windsor, Canada, Schuler was informed in 1944 that he would be sent to Noumea, New Caledonia, in the South Pacific, to work with the Office of War Information (OWI). When he arrived in Noumea on June 27, 1944, however, he discovered that OWI had never maintained any operations in Noumea and that he was in fact expected to replace the resident American Consul there. Schuler decided to resign from the Foreign Service that day, and on June 28 the outgoing Consul sent a telegram to the Secretary of State with that message. In a telegram that reached Schu-

ler on June 30 the chief of the Division of Foreign Service Personnel exhorted him to remain at his post, but when the Secretary of State did not reply to the resignation message by July 4, Schuler left Noumea.

Appellant states that upon his return to this country he again telegrammed the Secretary of State to inform him of his resignation. On July 20 he received a letter of reply informing him that he had been placed on "leave without pay status . . in view of the fact that you left your post without orders and without awaiting a reply to a telegram dated June 28, 1944 . . wherein you tendered your resignation." Alarmed by what he considered a misrepresentation of his actions, Schuler exchanged several letters with the Department and requested a hearing on his status.

The hearing was held on August 30 before the Board of Foreign Service Personnel. Although a transcript of the hearing now appears in Schuler's personnel file, he disputes its accuracy and maintains that he was asked only one question at the proceeding. On September 27 the Board sent Schuler a letter stating that his resignation had been rejected and that he was "removed from office for insubordination." The Board then denied his request for reconsideration.

Schuler held several temporary positions with foreign affairs agencies of the Government between 1945 and 1953, but never again attained permanent status despite several attempts. He asserts that in 1951 he was approved by the Office of the High Commissioner to Germany as Executive Officer in a consular office in Dusseldorf, a permanent post of foreign service officer rank, but that State Department officials in Washington rejected his nomination to that job. Finally, in February 1953 Schuler was linked publicly to one of the targets of Senator Joseph McCarthy's investigation of national security and two months later was discharged by the Government for the last time. Appellant says that since then he has been employed for only seven years, and that most job opportunities evaporated as soon as the prospective employer made a background check with the State Department.

## II

Schuler retained counsel in 1963 to attempt to acquire information about his Government personnel file. That effort did not bear fruit, however, and the basis for this suit was not laid until appellant filed a similar request in 1976 under the Freedom of Information and Privacy Acts. Schuler claims he then discovered not only the allegedly incorrect transcript of the 1944 hearing on his dismissal, but also many other distorted or inaccurate reports in his personnel file. The complaint states:

> These files contain accusations against plaintiff that he had serious emotional problems, that he falsified government employment applications, that he was involved in dubious financial dealings, that he associated with questionable individuals, that he was engaged in possible espionage, and that he was, at turns, dishonest, quarrelsome, meddlesome and arrogant. * * *

These false allegations, Schuler insists, were at the root of his inability to return to the State Department on a permanent basis between 1945 and 1953 or to find any permanent employment after that.

In August 1976 appellant asked the Foreign Service Grievance Board, which had been established by Congress in 1975, to set aside his 1944 dismissal from the Foreign Service, remove false statements from his records, and award him back pay and pension rights for his lost employment. An administrative official ruled that Schuler's petition did not satisfy the jurisdictional requirements for grievances of former employees because it did not involve either a financial benefit or a "selecting-out" grievance. The full Board affirmed this ruling on two occasions. In response to White House intervention on Schuler's behalf, the State Department produced a subsequent report on the case which, according to appellant, simply compiles the inaccurate material already in his files. Schuler instituted this action in December 1977 to overturn the Board's decision.

MacKINNON, Circuit Judge, concurring:

I concur completely in the *per curiam* opinion but write so that silence will not be interpreted as full concurrence in the other concurring opinion. It has some potential for misunderstanding.

First of all the *per curiam* opinion is not restricted to "narrow limits." It is a full holding that a suit seeking damages for alleged wrongful separation and alleged damaging misrepresentations cannot be considered under 22 U.S.C. § 1037a(1)(C) of the Foreign Service Act as a suit for "an *allowance or other financial benefit* [that] has been denied arbitrarily, capriciously, or contrary to applicable law or regulation." That Schuler was "never an active officer or employee at the Department of State *after* the passage of the applicable provisions in the Foreign Service Act" is irrelevant to the court's decision on this point. The result would have been the same if he *had* been a foreign service officer after the passage of the Act and made the same claim for damages that he makes here. The concurring opinion in one place seems to recognize this, when it states that it "is clear that claims of wrongful separation are not cognizable under the cited subsection (C) . . . ," but elsewhere it infers "[g]iven these facts," i. e., that he was not an active officer or employee after the passage of the Act, that such fact enters into the holding. It does not.

Another potential ambiguity in the concurring opinion is its statement that "the decision in this case does not cover situations involving persons who were officers or employees of the Department of State at the time of the passage of the Foreign Service Act." It does though if they seek to bring a suit such as Schuler brought. Of course, the present case does not involve such an officer or employee, and in that sense it does not cover them. But, the fact that the employment of a purported grievant pre-dated *or* post-dated the Foreign Service Act is a fact that is immaterial to the decision. One who was an officer or employee at the time of the passage of the Act cannot prevail in a suit as we have here under § 1037a(1)(C) any more than Schuler can. It is thus erroneous to infer that the rule announced in the decision, insofar as § 1037a(1)(C) is concerned, would not apply to officers or employees who were such after enactment of the Act.

In its next statement the concurring opinion deals with another subject by stating that officers and employees at the time of passage of the Act are not barred, because they may be perceived as "former officers or employees" following a disputed separation, from filing timely complaints against allegedly wrongful separations under another section of the Act, i. e., 22 U.S.C. 1037a(1)(B). The *per curiam* opinion, however, only involves 1037a(1)(C), not subsection (B) and nothing in the opinion suggests it *does involve* subsection (B). *The comment* is thus extraneous to this case.

Also, the concurring opinion is in error to the extent that it indicates or suggests that a "former officer or employee", as distinguished from an "officer or employee" under the Act, has any rights under subsection (B) of § 1037a(1) to complain of wrongful separation. *Insofar as he may be a "former officer or employee" under the Act he cannot sue in reliance on subsection (B).* Subsection (B) only authorizes a "grievant" to complain and the applicable statutory definition of "grievant" limits it exclusively to "officers and employees" and *specifically* confines any "former officer or employee" to claims under subsections (C) and (D). The statute thereby excludes them from any right to proceed under subsection (B). Specifically, the definition provides:

(A) "grievant" shall mean any *officer or employee* of the Service who is a citizen of the United States; or for purposes of subparagraphs (C) and (D), a *former officer or employee* of the Service; or in the case of death of the officer or employee, a surviving spouse or dependent family member of the officer or employee;

22 U.S.C. § 1037a(1)(A) (Emphasis added).

The "purpose" clause of the Foreign Service Act also refers *only* to "officers and employees."

It is the purpose of this part to provide *officers and employees* of the Service and their survivors a grievance procedure to insure a full measure of due process, and to provide for the just consideration and resolution of grievances of such officers, employees, and survivors.

22 U.S.C. § 1037, 89 Stat. 765. (Emphasis added). Thus the inclusion of "former officers and employees in subsection (C) and (D) are an exception to the general rule and under established law such terms are to be narrowly construed. *There is nothing in the case that calls for the dicta in the concurring opinion.*

Concurring opinion of Circuit Judge ED-WARDS, in which Circuit Judge WALD joins:

In light of the lengthy and convoluted history of this case, it is important to note the narrow limits of the court's opinion with respect to the appellant's claim under the Foreign Service Act.

The facts indicate that Mr. Schuler pursued his administrative claim before the Foreign Service Grievance Board long after he had been separated from the Service. The facts also reveal that Schuler was never an active officer or employee at the Department of State at any time after the passage of the applicable provisions of the Foreign Service Act. His complaint before the Grievance Board rested *solely* on a claim under 22 U.S.C. § 1037a(1)(C), which applies to "former officer[s] or employee[s]" who allege that "an allowance or other financial benefit has been denied arbitrarily, capriciously, or contrary to applicable law or regulation." Given these facts, the court has, I believe, correctly ruled that Schuler's claim must fail because the heart of his

grievance was a charge of wrongful separation. It is clear that claims of wrongful separation are not cognizable under the cited subsection (C) in the Foreign Service Act.

However, the decision in this case does not cover situations involving persons who were officers or employees of the Department of State at the time of the passage of the Foreign Service Act. Therefore, nothing in the decision should be taken to suggest that such persons are barred from filing timely complaints against allegedly wrongful "separation[s]" under 22 U.S.C. § 1037a(1)(B) because they may be perceived as "former officers or employees" following a disputed separation. The decision expresses no opinion on this point because the issue is not raised by Schuler's claim.[1]

---

1. Since the concurring opinion of Judge Mac-Kinnon attributes conclusions to me that cannot be found in my concurrence, I find it unnecessary to respond to the speculations contained in his concurrence.

As for Judge MacKinnon's observations regarding the scope of permissible actions under § 1037a(1)(B), it is sufficient to note that subsection (B) makes no distinctions based upon the present employment status of a grievant. Furthermore, a "grievance" may be filed under § 1037a(1)(B) if "presented within a period of

three years after the occurrence or occurrences giving rise to the grievance . . . ." 22 U.S.C. § 1037a(3). Therefore, employees and officers who file *timely* "complaints against separation" under subsection (B), presumably cannot be barred on a theory that they have become "former employees or officers" following a wrongful separation. As noted in my concurrence, the *per curiam* expresses no opinion on this point because the issue was not raised by Schuler's claim.