**INTERNATIONAL BROTHERHOOD OF TEAMSTERS CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA (AIRLINE DIVISION), Plaintiff,**

v.

**ASSOCIATION OF FLIGHT ATTENDANTS, AFL–CIO, Defendant.**

**Civ. A. No. 86–2834.**

United States District Court, District of Columbia.

June 29, 1987.

---

**12.** NYDF and CP also had the same mailing address and telephone number as NFI and Zionic. MI had the same telephone number, but its mailing address was: "P.O. Box 835, Bridgeton, MO. 63044." (Defendant's Exhibit 4).

**13.** If the Court is incorrect as to the appropriate standard of review of the NCUAB's insurance claim decisions, the Court here expressly concludes that the NCUAB's decision to deny plaintiff's insurance claims was not arbitrary, capricious, or an abuse of discretion. The NCUAB's interpretation of paragraph 2 not to include

organizations was not arbitrary, capricious, or an abuse of discretion. The NCUAB's determination that the three cemetery companies' tenuous affiliation to NFI (NFI owned one-half of the stock of NHC; NHC owned the three cemetery companies) does not satisfy the "affiliated" requirement of paragraph 2 was not arbitrary, capricious, or an abuse of discretion. *But cf. supra* footnote 11. Thus, the Court here expressly concludes that, after arbitrariness review, the NCUAB is entitled to summary judgment on plaintiff's complaints.

848

James A. McCall, Washington, D.C., for plaintiff.

Deborah Greenfield, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, Senior District Judge.

## I. INTRODUCTION

This case concerns a dispute between two rival unions which had campaigned to win the position of bargaining representative for employees of Northwest Airlines, Inc. ("Northwest"). As the successor union, plaintiff International Brotherhood of Teamsters ("Teamsters") claims that the predecessor union, Association of Flight Attendants ("AFA"), failed to process over 1,000 employee grievances. Plaintiff avers that it has inherited the job of processing these grievances at its expense and sues for unjust enrichment and other forms of equitable relief. A question of this Court's

jurisdiction over the matter has been presented in plaintiff's motion to remand.

## II. BACKGROUND

Both parties to this action are unincorporated labor organizations which represent airline employees subject to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* Prior to July, 1986, the airline division of the Teamsters had represented approximately 3,600 Northwest flight attendants and the AFA had represented 2,600 flight attendants of Republic Airlines.[1] On January 28, 1986, Northwest applied to the Department of Transportation ("DOT") for approval of its application to acquire Republic. The DOT approved Northwest's application on July 31, 1986.

On August 12, 1986, Northwest announced that it could only recognize one union following the merger and that it intended to recognize the Teamsters as the exclusive bargaining representative for its flight attendants. The AFA filed an application for the investigation of a representation dispute with the National Mediation Board ("NMB"), thereby triggering an election to be conducted by the NMB.[2] On September 30, 1986, six weeks before the election, plaintiff filed a complaint in the Superior Court of the District of Columbia, alleging that the AFA had been unjustly enriched by failing to process employee grievances.[3] The complaint further demanded the transfer of all grievance files held by the AFA. On November 10, 1986, the Mediation Board counted the ballots. The Teamsters had won the election.[4]

Following the merger, it was plaintiff's responsibility, as the recognized bargaining representative for flight attendants on both Northwest and Republic, to process grievances left unresolved by the AFA prior to the merger. The earlier agreement between AFA and Republic had established a grievance and arbitration procedure in accordance with section 204 of the Railway Labor Act ("Act"), 45 U.S.C. § 184. Sections 24 and 25 of the agreement provided for the filing of grievances, a hearing, and the submission of unresolved grievances to the System Board of Adjustment. Section 30 of the agreement provided for flight attendants to give written authorization for Republic to deduct union dues from their paychecks and to remit these dues to AFA on a monthly basis.

Shortly after the November election, defendant AFA states that its Director of Collective Bargaining, Stephen Crable, contacted counsel for the Teamsters to arrange for the transfer of grievance records. *See* Declaration of Stephen Crable at ¶¶ 2–3. On December 9, 1986, Mr. Crable wrote to the AFA's three local Executive Councils in Memphis, Detroit and Minneapolis requesting the shipment of grievance files to AFA headquarters in Washington, D.C. On January 6, 1987, Crable forwarded these files to counsel for the Teamsters.[5]

---

1. For approximately fifteen years the AFA had been recognized as the collective bargaining representative for Republic flight attendants. Republic Airlines was the product of several previous mergers.

2. The AFA also requested from the National Mediation Board a clarification on whether AFA's certification as the representative of Republic flight attendants was extinguished as a matter of law upon the operational merger of Republic and Northwest. On September 16, 1986, the NMB ruled that AFA's certification was extinguished as a result of the merger. After reviewing a motion to reconsider, the NMB upheld its earlier ruling on November 7, 1986.

3. On October 28, 1986, this court issued an order removing the action from D.C. Superior Court on the appearance that the complaint raised issues of federal law and, therefore, the Court had jurisdiction pursuant to 28 U.S.C. § 1331.

4. According to the defendant, the election campaign tactics by the Teamsters were fairly aggressive. Defendant asserts that one campaign theme centered on the AFA's alleged failure to process employee grievances and other representational criticisms. *See* Declaration of Clare Burt Gretz at ¶ 21.

5. The record indicates that the AFA thought that the transfer of the grievance files would dispose of the Teamsters' suit. *See* Letter to James McCall from Stephen Crable dated December 1, 1986. Although the case was not dismissed, it does appear that the demand for the grievance files included in the complaint is now a moot issue.

Plaintiff's action, originally filed in the Superior Court of the District of Columbia, was removed to this Court on October 28, 1986. In this action now before the Court, plaintiff submits that the AFA failed to screen grievances in order to eliminate non-meritorious complaints. Since the AFA allegedly adopted a policy of processing all grievances received, plaintiff suggests that this policy created a substantial backlog of grievances. Plaintiff also alleges that the AFA retained more than 60 percent of its membership dues while allowing the backlog of grievances to mount.

Additionally, plaintiff avers that it has spent time and money attempting to investigate and resolve the leftover grievances. Since the receipt of the grievance files, plaintiff Teamsters has processed three cases through arbitration at a cost of $3,000 per case. At oral argument, counsel for plaintiff could not estimate how many more grievances will need to be arbitrated but all cases will require investigation. This investigation, according to plaintiff, is hindered by the age of some of the complaints, the frequent change of residence by many flight attendants and the several collective bargaining agreements in effect at various times due to Republic's complicated merger history.

Plaintiff tailors the instant action under a common law theory of unjust enrichment in order to recover the expense of resolving grievances filed while the AFA received membership dues from the Republic flight attendants and had the legal obligation under the Railway Labor Act to process these grievances. This suit does not include any individual flight attendants claiming to be injured by the AFA's alleged failure to process grievances. The Teamsters Union requests $500,000 in restitution, plus attorney's fees and costs, as well as a declaration that the AFA was unjustly enriched. In its motion papers, the Teamsters Union further indicates that it desires this Court to establish a "constructive trust," requiring the AFA to hold in escrow a designated amount of funds to cover plaintiff's expenses for screening, investigating and arbitrating the grievances allegedly left unresolved.

## III. DISCUSSION

### A. *Jurisdiction*

Congress has established that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). If it appears before final judgment that a case was not properly removed, *i.e.* the matter was not within the original jurisdiction of the district court, the district court must remand it to the state court from which it was removed. 28 U.S.C. § 1447(c). In cases such as this one, where there is no diversity of citizenship between the parties, the propriety of removal hinges upon whether the matter falls within this Court's "federal question" jurisdiction. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

As the Supreme Court has noted, "... the statutory phrase 'arising under the Constitution, laws, or treaties of the United States' has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts." *Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 2845–46, 77 L.Ed.2d 420 (1983). The Court, however, went on to state that "an action 'arises under' federal law 'if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law.'" *Id.* at 9, 103 S.Ct. at 2846 (quoting P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, *The Federal Courts and the Federal System* 889 (2d ed. 1973)).

One definite rule has emerged, that plaintiff generally is master of his complaint. Therefore, a cause of action arises under federal law only when the

plaintiff's well-pleaded complaint raises issues of federal law.[6] *Franchise Tax Board, supra,* 463 U.S. at 9–10, 103 S.Ct. at 2846–47; *Gully v. First National Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). An exception to the well-pleaded complaint rule is that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint. This rule against "artful pleading" has been recognized by the Supreme Court. *See Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 324, 101 S.Ct. 1124, 1134, 67 L.Ed.2d 258 (1981) (intent of Congress to regulate a field cannot be avoided by "artful pleading"); *Brown v. GSA,* 425 U.S. 820, 833, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976) (it would require "suspension of disbelief" to accept that Congress intended its remedial scheme for federal employment discrimination to be circumvented by "artful pleading"); *see also Drivers, Chauffeurs & Helpers v. Seagram Sales Corp.,* 531 F.Supp. 364, 367 (D.D.C.1981) (court must carefully examine complaint to determine if federal claim is presented, even if terms of complaint couched in state law); *Williams v. Caterpillar Tractor Co.,* 786 F.2d 928, 931 (9th Cir.1986) (under "artful pleading" doctrine, court may remove state law claim which "in actuality raises an essential federal law question."), *aff'd,* — U.S. ——, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

Another corollary of the well-pleaded complaint rule is that "... Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Insurance Co. v. Taylor,* — U.S. ——, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). This corollary has been named the *"Avco* principle" after the decision which found that the pre-emptive force of section 301 of the Labor Management Relations Act ("LMRA") was so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. *See Avco Corp. v. Machinists,* 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968). Reflecting on *Avco,* the Supreme Court has stated that "[a]ny such suit [arising under § 301] is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Board, supra,* 463 U.S. at 23, 103 S.Ct. at 2853–54.

Very recently, in *Metropolitan Life Insurance,* the Supreme Court has elaborated on the *Avco* principle. In that case, the Supreme Court held that for suits which purportedly raise only state law claims, a court must look to whether "Congress clearly manifested an intent to make causes of action ... removable to federal court." 107 S.Ct. at 1548. The Court found that the case before it was removable for Congress meant to completely pre-empt the subject area of section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") which provides that a beneficiary may bring a civil action to recover benefits due him under the terms of an employee benefit plan. *Id.*

■ The jurisdictional problem before the Court requires an application of these developments in removal law. Plaintiff clearly asserts that it pleads only a state law cause of action: unjust enrichment. Defendant, on the other hand, claims that the gravamen of the complaint represents a dispute over whether defendant union breached its duty under collective bargaining agreements and its duty of fair representation under federal law by failing to process employee grievances.

The Court finds that, for several reasons, it has jurisdiction over this case. First, in accordance with the "well-pleaded complaint" rule, the face of the complaint indicates that the Court would need to inter-

---

**6.** The defense of federal pre-emption *itself* does not constitute an adequate basis for removal of a case to federal court. "Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Insurance Co. v. Taylor,* — U.S. ——, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

pret the terms of several collective bargaining agreements. The complaint alleges that pursuant to "AFA's duty as the exclusive bargaining representative for Republic flight attendants, the AFA had a legal obligation to process grievances filed by Republic flight attendants." Complaint ¶ 17. This legal obligation stemmed from the existence of various collective bargaining agreements negotiated between the AFA and the Republic flight attendants. Complaint ¶ 8. Several paragraphs of the complaint describe provisions of the most recent collective bargaining agreement, negotiated in 1984, including the provision establishing grievance procedures. Complaint ¶¶ 9–11.

It is apparent from the complaint itself that the Teamsters intends to sue the AFA for its failure to abide by its collective bargaining agreements with the flight attendants of the former Republic Airlines. In order for this Court to declare that the AFA was unjustly enriched by failing to fulfill its contractual obligations, the Court must define the scope of AFA's obligations by reviewing the applicable collective bargaining agreements. It has long been understood that a collective bargaining agreement is "an agreement creating relationships and interests under the federal common law of labor policy." *Bowen v. U.S. Postal Service,* 459 U.S. 212, 220, 103 S.Ct. 588, 594, 74 L.Ed.2d 402 (1983). *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985) (questions relating to substance of labor agreement must be resolved by reference to federal law). Through section 301 of the Labor Management Relations Act, federal district courts have jurisdiction over suits for a breach of a collective bargaining agreement. 29 U.S.C. § 185.[7] The

Supreme Court has expressly stated that the "preemptive force of § 301 [of the LMRA] is so powerful as to displace entirely any state cause of action" for violation of a collective bargaining agreement. *Franchise Tax Board, supra,* 463 U.S. at 24, 103 S.Ct. at 2854.

Second, it is also apparent that this Court is confronted with applying federal principles governing the AFA's duty of fair representation.[8] This jurisdiction has recognized that a union breaches its duty of fair representation if grievances are processed in an arbitrary manner. *See Parker v. Baltimore & Ohio Railroad Co.,* 555 F.Supp. 1182, 1185 (D.D.C.1983) (under duty of fair representation, employee entitled to nonarbitrary, nondiscriminatory and good faith response to grievances filed); *see also Ruzicka v. General Motors Corp.,* 649 F.2d 1207, 1212 (6th Cir.1981) (union liable for unfair representation where it arbitrarily fails to process employee grievance without compelling reason), *cert. denied,* 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983).

Third, congressional intent to pre-empt suits for violation of collective bargaining agreements, including suits *between* labor organizations, is clear from the face of the jurisdictional provisions in section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). *See Metropolitan Life Ins. Co. v. Taylor,* —— U.S. ——, 107 S.Ct. at 1546, 95 L.Ed.2d 55.

For these reasons, the Court concludes that plaintiff's cause of action is pre-empted. Federal rights are violated by the acts plaintiff alleges in its complaint: breach of collective bargaining agreements and breach of the duty of fair representation. Plaintiff appears to have "artfully pleaded"

---

7. Section 301, 29 U.S.C. § 185(a), states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

8. The statutory duty of fair representation has been described by the Supreme Court: "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967).

unjust enrichment in order to avoid necessary federal questions. Therefore, this Court has jurisdiction to decide the merits of this case.

Plaintiff argues that there is neither an issue of fair representation nor any interpretation of a collective bargaining agreement required in this case. It is evident that no contractual relationship of any sort existed between the AFA and the Teamsters. Plaintiff argues that it brings an action of unjust enrichment based upon "quasi-contract" or "contract-implied-at-law" theories.[9] Plaintiff further argues that there is no cause for the Court "to determine if anyone or a group of grievances were mishandled." Plaintiff's Reply at 2. Instead, plaintiff urges that the Court must merely determine whether the AFA received funds from its members but failed to process grievances.

The Court disagrees with plaintiff's characterization of this case. Although plaintiff demands relief under a state claim, the overriding issue presented is one covered by federal law: whether the AFA failed properly to discharge its grievance process as an exclusive bargaining representative under the Railway Labor Act. Moreover, the Teamsters' allegation of unjust enrichment reveals that it must not only show that it conferred a benefit upon the AFA, but that the AFA's retention of that benefit is unjustified, unfair and, in good conscience, the AFA must make restitution. *See Bloomgarden, supra,* 479 F.2d at 211.

There is little chance of deciding this equitable matter without first confirming that the AFA was duty-bound to process the grievances at issue and, in bad faith, it failed to fulfill this duty. *Id.* Thus, a review of the AFA's duty to process grievances implicates an analysis of the collective bargaining agreements involved, as well as the federal principles of fair representation. "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law...." *Allis-Chalmers, supra,* 471 U.S. at 211, 105 S.Ct. at 1911. As the Supreme Court further held in *Allis-Chalmers,*

> ... when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, see *Avco Corp. v. Aero Lodge 735,* 390 U.S. 557, [88 S.Ct. 1235, 20 L.Ed.2d 126] (1968), or dismissed as pre-empted by federal labor-contract law.

*Id.* at 220, 105 S.Ct. at 1916.

The Court also rejects plaintiff's argument raising a "public policy" exception to the pre-emption doctrine.[10] Plaintiff cites to a series of cases where courts refused to pre-empt state law claims by employees who were victims of retaliatory discharge. *See Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367, 1373-74 (9th Cir.1984) (California has established public policy interest in protecting employee discharged for reporting shipment of adulterated milk to health officials), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1986); *Sutton v. Southwest Forest Industries, Inc.,* 643 F.Supp. 662, 665 (D.Kan.1986) (state has strong public policy interest in protecting employee from retaliatory discharge, therefore, action not pre-empted by federal law). Plaintiff asserts that the District of Columbia has an interest in protecting parties from being victimized by unjust

---

9. "The quasi-contract ... is not really a contract, but a legal obligation closely akin to a duty to make restitution.... For the purpose of preventing unjust enrichment, however, a quasi-contract—an obligation to pay money to another—will be recognized in appropriate circumstances, even though no intention of the parties to bind themselves contractually can be discerned." *Bloomgarden v. Coyer,* 479 F.2d 201, 210 (D.C.Cir.1973) (footnotes omitted); *see also Zaleski v. Congregation of Sacred Hearts,*

256 A.2d 424 (D.C.App.1969); *Hillyard v. Smither & Mayton,* 76 A.2d 166 (D.C.Mun.App.1950).

10. *See Allis-Chalmers, supra,* 471 U.S. at 212, 105 S.Ct. at 1912 (footnote omitted): "In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract."

enrichment. In its briefs and at oral argument, however, plaintiff was unable to cite a single case articulating the relevant question of whether the District of Columbia has a public policy of protecting one labor union from unjust enrichment by another labor union. Nor is this "public policy" articulated in the D.C.Code. Since no District of Columbia policy is discernible by the Court, the public policy exception raised by plaintiff is inapplicable. Besides, the facts at bar are plainly distinguishable from situations where a "whistle-blower" is fired for revealing wrongdoing by an employer.

In sum, the Teamsters' state law claim of unjust enrichment is inextricably intertwined with an application of federal labor law principles. Therefore, the Court finds that it has jurisdiction over this matter. Accordingly, the Court denies plaintiff's motion to remand this matter to the Superior Court of the District of Columbia.

### B. *Merits*

Upon deciding that this Court has jurisdiction over this matter, it is evident that the action should be dismissed for failure to state a claim under either federal or state law. Plaintiff has shown neither that the AFA owed any duty to the Teamsters with respect to grievance handling, nor that the AFA's processing of grievances violated applicable standards under the federal duty of fair representation. The AFA has never represented the Teamsters for the purposes of collective bargaining as that term is used in the Railway Labor Act. *See* Declaration of Clare Burt Gretz at ¶ 34. Plaintiff has failed to allege any violation of a contract duty owed to it.

■ Nor has the plaintiff made out a claim under the duty of fair representation. A labor union owes a duty of fair representation only to the members it represents. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909–10, 17 L.Ed.2d 842 (1967) (as exclusive bargaining representative, union had statutory duty fairly to represent all member employees); *see also Warehouse*

*Union, Local 860 v. National Labor Relations Board,* 652 F.2d 1022, 1024 (D.C.Cir. 1981); *Baker v. Newspaper & Graphic Communications Union,* 628 F.2d 156, 164 (D.C.Cir.1980). As plaintiff has not filed this suit on behalf of the former Republic flight attendants, there is no claim for breach of the AFA's duty of fair representation.

■ Turning to plaintiff's state law claim, the Court finds that plaintiff also has failed to state a claim of unjust enrichment.[11] According to Williston, "[t]hree elements must be established in order that a plaintiff may establish a claim based on unjust enrichment." These elements are:

1. A benefit conferred upon the defendant by the plaintiff;

2. An appreciation or knowledge by the defendant of the benefit; and

3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

S. Williston, *A Treatise on the Law of Contracts* § 1479 (3d ed. 1970) 276.

First, as a matter of law, plaintiff has not conferred any benefit upon the AFA. The AFA lost the election and no longer has the duty to process the grievances at issue. As the new exclusive bargaining representative, the Teamsters has the legal duty to process the grievances. The services thereby provided by the Teamsters inure to the benefit of the flight attendants, not the AFA. Second, there are no facts on the record to suggest that, in accordance with a quasi-contract theory, the AFA originally intended or expected to pay the Teamsters for its services in processing the grievances of former Republic Airline flight attendants. Those flight attendants affected possibly have a cause of action, under either a contract or quasi-contract theory. The record, however, reveals no understanding, expressly or impliedly, between the two unions at bar.

---

11. The Court has pendent jurisdiction to consider this claim. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Third, any benefits which the Teamsters *may* have conferred on the AFA were conferred officiously. In other words, plaintiff union *volunteered* its services to process the grievances at issue when it campaigned and won the right to represent all the post-merger Northwest flight attendants. *See* Williston, *supra,* § 1479 at 276 n. 14 (citing cases illustrating the rule of law that a benefit officiously thrust upon one is not considered unjust enrichment).

In conclusion, plaintiff has set forth no claim upon which relief can be granted. Plaintiff has failed to make a sufficient showing establishing the existence of elements essential to the state and federal claims presented. *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Therefore, pursuant to Federal Rule of Civil Procedure 56(c), the Court grants summary judgment in favor of defendant AFA.