**UNITED STATES of America, Plaintiff,**

v.

**Amparo B. BOUCHEY, John E. Ricche, and Wendell Harbour, Defendants.**

**Civ. A. No. 94–952 SSH.**

United States District Court, District of Columbia.

Aug. 23, 1994.

Robert L. Shapiro, Asst. U.S. Atty., Washington, DC, for plaintiff.

Amparo B. Bouchey, pro se.

Henry Schoenfeld, Washington, DC, for Ricche.

Charles B. Molster, III, Keck, Mahin & Cate, Washington, DC, for Harbour.

## MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

Before the Court are defendant Wendell Harbour's motions to dismiss the complaint and amended complaint for failure to state a claim upon which relief can be granted.[1] The Court denies defendant's motions. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12," the Court nonetheless sets forth its analysis. *See* Fed.R.Civ.P. 52(a).

### Background

The government contends that from 1987 to 1989, Harbour participated in an alleged conspiracy to charge the United States inflated rates for consulting services. In his capacity as a federal government employee, Harbour allegedly received a sum of money for approving budgets that contained the contested consulting fees. The government seeks damages and civil penalties based on the False Claims Act, federal conflict of interest statutes, and common law theories of payment under mistake of fact and unjust enrichment.

At the times relevant to the allegations in the complaint, Harbour served as chief of the Minority Business Resource Center ("MBRC") within the Department of Transportation's ("DOT") Office of Small Disadvantaged Business ("OSDBU"). As MBRC chief, Harbour processed and reviewed the budgets of Capital Bank, which held a cooperative agreement to administer a loan program to minority, women-owned, and disadvantaged business enterprises. The government provided the funding for the loan program, while MBRC and OSDBU approved Capital Bank's budget proposals and provided reimbursements for the loans as called for in the budget.

In 1988, Harbour approved Capital Bank's second annual administrative budget, which included an allocation of $150,000 for consulting services provided by Gudricch & Peers Group, Ltd. According to the government, Gudricch & Peers was controlled by defendant John E. Ricche, who had been providing consulting services to OSDBU on an independent basis for approximately $30,000 each year since 1982. In 1989, however, defendant Amparo Bouchey, who served as OSDBU director, was forced to terminate the independent consulting services performed by Ricche due to OSDBU's budgetary constraints.

The government alleges that Ricche and Bouchey, knowing in advance that the independent consulting relationship was coming to an end, persuaded Capital Bank to pay Gudricch & Peers a significantly inflated rate for the same consulting services that previously had been performed by Ricche. At the completion of the scheme, Ricche was to provide a portion of the inflated charges to Bouchey in return for her leaving federal employment and joining Ricche's business. The government alleges that Harbour agreed to accept a sum of money to ensure that the inflated allocation met with MBRC approval.

On April 25, 1989, Capital Bank prepared its first monthly invoice based on the budget approved by Harbour, which included $12,500 for Ricche and Gudricch & Peers. OSDBU performed a wire transfer of government funds to Capital Bank based on this invoice on May 3, 1989. On May 17, 1989, Ricche caused Capital Bank to credit Gudricch & Peers's checking account based on this transfer. An identical process took place during each of the following 11 months. The government contends that, as a result of Harbour's allegedly false, improper, and unlawful claims, it paid $150,000 for consulting services that were worth only $30,000. Harbour moves to dismiss all counts for failure to

---

1. After Harbour filed his first motion to dismiss, the government filed an amended complaint on July 8, 1994. The amended complaint is identical to the first complaint except for the addition of Count Six. Harbour later filed a motion to dismiss this Count as well.

state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6).

### Discussion

■ When considering a Rule 12(b)(6) motion to dismiss, a court should not grant the motion unless the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979) (citing *Conley v. Gibson,* 355 U.S. 41, 43–47, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)), *vacated on other grounds,* 628 F.2d 199 (D.C.Cir.1980) (en banc). The complaint is construed liberally in the plaintiff's favor, and a court should give the plaintiff the "benefit of all inferences that can be derived from the facts as alleged." *Id.* However, the facts must be sufficiently described in the complaint to allow the court to draw such inferences. *See Papasan v. Allain,* 478 U.S. 265, 284–86, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986).

### Counts One and Two

Counts One and Two allege that Harbour violated the False Claims Act by knowingly causing false or fraudulent claims and records to be made or presented to the United States. 31 U.S.C. §§ 3729(a)(1) and (2). To establish either of these claims under § 3729(a), the government must show: (1) the existence of a request for payment, and (2) that this request was fraudulent. *See United States ex rel. Glass v. Medtronic,* 957 F.2d 605, 608 (8th Cir.1992). Here, the complaint alleges that 12 monthly invoices totalling $150,000 were presented to the government, thus satisfying the first element.

■ To fulfill the second criterion, a fraudulent request for payment, the complaint must allege the supporting facts with a higher degree of particularity. *See* Fed.R.Civ.P. 9(b). A sufficient claim for fraud under Rule 9(b) must state the time, place, and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1278 (D.C.Cir.1994). The claim also must state which individual made the misrepresentation. *See United States ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1385 (D.C.Cir.1981), *cert. denied,* 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982).

■ Here, the complaint alleges that Harbour and his two co-defendants executed their scheme to defraud the government beginning in early 1988 and continuing until May of 1990. The complaint identifies Washington, D.C., as the location where invoices and payments integral to the alleged scheme were processed. Finally, the complaint contends that these invoices resulted in overcharges of $120,000 that were paid to Ricche and divided among the other two defendants. Based on these facts and the inferences that may be derived from them, the Court finds that Counts One and Two have been pleaded with sufficient particularity.[2]

### Count Three

■ Count Three alleges that Harbour violated the False Claims Act by conspiring to make or present false or fraudulent claims for payment to the United States. 31 U.S.C. § 3729(a)(3). To state a claim under § 3729(a)(3), the government must show: (1) that defendant conspired with one or more persons to have a fraudulent claim paid by the United States, (2) that one or more of the conspirators performed any act to have such a claim paid by the United States, and (3) that the United States suffered damages as a result of the claim. *See, e.g., United States ex rel. Stinson, Lyons, Gerlin & Bustamonte, PA v. Provident Life & Accident Ins. Co.,* 721 F.Supp. 1247, 1259 (S.D.Fla.1989) (citing *Blusal Meats, Inc. v. United States,*

---

**2.** Harbour argues that the government failed to show that the government did not know, or could not have known, of the facts that make a claim, or the record or statement used to get the claim paid, false. However, a plaintiff is not required to "allege with specificity every element of a cause of action if it contains allegations from which an inference may be drawn that evidence on the essential elements will be produced." *See*

*Resolution Trust Corp. v. Gardner,* 788 F.Supp. 26, 27 (D.D.C.1992). Assuming that the government is required to prove circumstances as described by Harbour, the Court finds that the government has provided a sufficient factual basis from which to infer its lack of knowledge of the alleged falsity of the claims and records provided by Harbour.

638 F.Supp. 824, 828 (S.D.N.Y.1986), *aff'd,* 817 F.2d 1007 (2d Cir.1987)).

The complaint alleges that Harbour conspired with Ricche and Bouchey to collect deliberately inflated payments for consulting services from the United States.[3] It also describes in detail the actions allegedly undertaken by the conspirators to ensure that the consulting services would be included in Capital Bank's budget. Lastly, the complaint contains specific allegations that it suffered damages of approximately $120,000 as a result of paying for consulting services it contends were worth only $30,000. These facts, accepted as truthful at this stage of the litigation, sufficiently support a claim for relief pursuant to § 1329(a)(3).

*Count Four*

Count Four alleges that Harbour and his co-defendants made misrepresentations of material fact in causing the United States to be billed for the consulting services performed by Gudricch & Peers. The government seeks to recover these funds as well as interest and other costs pursuant to its common law right to reclaim funds which its agents have wrongfully, erroneously, or illegally paid. *See, e.g., Bell v. New Jersey & Pennsylvania,* 461 U.S. 773, 782 n. 7, 103 S.Ct. 2187, 2193 n. 7, 76 L.Ed.2d 312 (1983); *United States v. Wurts,* 303 U.S. 414, 414–17, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938). The complaint alleges that Harbour participated in a conspiracy through which its funds were erroneously paid to other members of the conspiracy. The complaint alleges sufficient facts to support a claim for relief under this theory.

*Count Five*

The government alleges that as a result of the alleged conspiracy to charge inflated rates for Gudricch & Peers's consulting services, Harbour was unjustly enriched to the detriment of the United States. To state a claim for unjust enrichment, a plaintiff must establish that: (1) plaintiff conferred a benefit upon the defendant; (2) the defendant possessed an appreciation or knowledge of the benefit; and (3) the defen-

dant accepted or retained the benefit under such circumstances "as to make it inequitable for the defendant to retain the benefit without payment of its value." *International Bhd. of Teamsters v. Association of Flight Attendants, AFL–CIO,* 663 F.Supp. 847, 854 (D.D.C.1987).

The government alleges in its complaint that Harbour knowingly received a sum of money for his approval of the Capital Bank budget. Moreover, the circumstances surrounding this payment are sufficient for the Court to infer that Harbour's retention of these funds would result in an outcome that is inequitable to the government. For these reasons, the Court finds that the government has stated sufficient facts to support its claim of unjust enrichment.

*Count Six*

Count Six alleges that Harbour's involvement in the alleged conspiracy and his review and processing of Capital Bank's second annual administrative budget constituted a conflict of interest under 18 U.S.C. § 208, for which Harbour is liable for a civil penalty to the United States pursuant to 18 U.S.C. § 216(b). An employee of the executive branch violates section 208 if he participates personally and substantially as a government officer or employee in a matter in which, to his knowledge, he has a personal financial interest. 18 U.S.C. § 208. The complaint alleges that Harbour was part of a conspiracy that provided for Harbour to be compensated for approving the budget and that the conspiracy was formed prior to the time Harbour approved the budget. These allegations and the inferences to be drawn therefrom are sufficient to support a claim under § 208.

Upon consideration of the foregoing, it hereby is

ORDERED, that defendant Harbour's motions to dismiss the complaint and amended complaint are denied.

SO ORDERED.

---

**3.** As described in the analysis for Counts 1 and 2 *supra,* the complaint already has met the stan-

dard under Rule 9(b) for pleadings which aver fraud.