**Terree BATTLE, Plaintiff,**

v.

**Robert E. RUBIN, Secretary, U.S. Department of the Treasury, Defendant.**

**No. CIV.A. 99–1439(RMU).**

United States District Court, District of Columbia.

Sept. 11, 2000.

Karl W. Carter, Jr., Washington, DC, for plaintiff.

Wilma A. Lewis, U.S. Attorney, United States Attorney's Office, Washington, DC, for defendant.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### Granting the Defendant's Motion to Dismiss

### I. INTRODUCTION

This matter is before the court on the defendant's motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

The plaintiff, Ms. Terree Battle (the "plaintiff" or "Ms. Battle"), brought this suit for declaratory and injunctive relief and damages under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. The plaintiff claims that her employer, the U.S. Department of the Treasury, discriminated against her on the basis of her race. Specifically, the plaintiff alleges that her employer removed her from her position at the Bureau of Engraving and Printing, a subdivision of the Department of the Treasury, for improper conduct, whereas white employees who had engaged in the same misconduct had not been fired. *See* Compl. at 1. The defendant, Robert Rubin, is the former Secretary of the Treasury (the "defendant" or "Secretary"), who is being sued in his official capacity.

The defendant moves to dismiss this action under Rule 12(b)(1) on the ground that the court lacks subject-matter jurisdiction because the plaintiff failed to exhaust her administrative remedies. *See* Mot. to Dis. at 1. The plaintiff counters that the doctrine of equitable tolling should allow her claim to proceed. *See* Pl.'s Opp'n to Mot. to Dis. ("Pl.'s Opp'n") at 1. For the reasons that follow, the court holds that because the plaintiff cannot rely on equitable tolling, she has failed to exhaust her administrative remedies. Accordingly, the defendant's motion to dismiss will be granted.

## II. BACKGROUND

The plaintiff, an African–American woman, was employed by the Bureau of Engraving and Printing (the "Bureau"), a division of the U.S. Department of the Treasury. *See* Compl. at 2. She worked at the Bureau as a sheet examiner/counter for six years before her March 2, 1998 removal. During the entire period of her employment, the plaintiff had no disciplinary actions taken against her except for

the incident at issue. *See id.; see also* Mot. to Dis. at 1. On September 24, 1997, the plaintiff submitted false documentation to her supervisor to explain her absence from work the previous day. *See* Mot. to Dis., Ex. 1. Ms. Battle concedes that she gave her supervisor an "altered" document to explain her absence. *See* Compl. at 3.

On January 6, 1998, after investigating this incident, the plaintiff's foreman, Wayne W. Landry, notified her of his proposal to remove her from her job because of her "improper conduct." *Id.; see also* Mot. to Dis., Ex. 1. Specifically, the Bureau charged Ms. Battle with violating Item 19 of the Bureau's Table of Offenses and Penalties, which provides that employees committing misrepresentation, falsification or concealment of material facts regarding their application, employment record, or investigation may receive discipline ranging from an official reprimand to removal. *See* Compl. at 3. The plaintiff's attorney responded to this notification with a letter dated January 24, 1998. *See* Mot. to Dis., Ex. 5. On February 13, 1998, the plaintiff, who was represented by counsel, met in person with George L. Shue, Chief of the Office of Facilities Management.[1] *See* Mot. to Dis., Exs. 2, 6. In a letter dated February 26, 1998, Mr. Shue informed the plaintiff of his decision to fire her effective March 2, 1998. *See id.*

After receiving this news, the plaintiff contacted a Bureau Equal Employment Opportunity ("EEO") counselor on March 9, 1998. *See* Mot. to Dis., Ex. 3. On March 16, 1998, Bureau EEO Specialist Arthur Hicks met informally with the plaintiff. *See* Mot. to Dis. at 1. At this meeting, Mr. Hicks reviewed the "EEO Counselor Checklist" with the plaintiff. *See id.* The checklist informs people who contact EEO counselors of their rights and responsibilities under Section 1614.105(b) of the EEOC regulations. As part of the review

---

1. At this February 13 meeting with Mr. Shue, the plaintiff had two representatives with her, at least one of whom, Mr. Karl Carter, Jr., was her lawyer. The plaintiff's other representative was a person named Dennis Phelps. *See* Mot. to Dis., Ex. 2.

of the checklist, Mr. Hicks explained the various time limits that applied, including paragraph # 9, which states that a complainant has "the right to file a formal complaint within 15 calendar days of receipt of the notice...." *Id.* As she did with every other paragraph, the plaintiff initialed the blank line next to paragraph # 9 to indicate she had discussed the item with Mr. Hicks. *Id.*

On March 17, 1998, Mr. Hicks sent the plaintiff a notice of her "right to file" a discrimination complaint under 29 C.F.R. § 1614.105 *See* Mot. to Dis., Ex. 4. This notice informed the plaintiff of the requirement that she file a formal complaint within 15 days of the date of her receipt of the notification.[2] *See id.* at 2. She received the notification on March 28, 1998. *See id.;* Compl. at 3. A week before the deadline, Mr. Hicks telephoned the plaintiff to remind her of the 15–day limit. *See* Mot. to Dis., Ex. 4. In response, the plaintiff indicated that she would "take care of it." *See id.*

The plaintiff, however, did not file her formal complaint until April 16, 1998, three days after the 15–day deadline. *See* Compl. at 3. In her EEO complaint, she listed attorney Karl Carter as her representative. *See* Mot. to Dis., Ex. 6. The Director of the Regional Complaints Center of the Department of the Treasury, Michael Morgan–Garde, responded to the plaintiff's administrative complaint in a letter dated May 14, 1998. *See* Mot. to Dis. at 2. In this letter, Mr. Morgan–Garde asked why the plaintiff had filed her administrative complaint late. *See id.* In Mr. Carter's May 19 response to this letter, he said the plaintiff had mistakenly believed she had 45 days in which to file her formal complaint. *See id.* In her complaint filed with this court, the plaintiff listed as a second explanation for missing the deadline that her grandmother was dying of cancer. *See* Compl. at 3.

On June 4, 1998, the Regional Complaints Center of the Department of the Treasury dismissed the plaintiff's complaint as untimely. *See* Mot. to Dis. at 3. On March 5, 1999, the Equal Employment Opportunity Commission's Office of Federal Operations affirmed the decision. *See* Compl. at 3. The plaintiff filed her complaint in this court on June 7, 1999.

## III. ANALYSIS

### A. Legal Standard

The defendant brings this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Pitney Bowes v. United States Postal Serv.,* 27 F.Supp.2d 15, 19 (D.D.C. 1998) (Urbina, J.). While the court must accept all well-pled allegations of fact, allegations that are overbroad and unsupported by specific factual averments are insufficient to state a claim upon which relief can be granted. *See DevVoren Stores, Inc. v. City of Philadelphia,* 1990 WL 10003, *1 (E.D.Pa.1990); *Crowder v. Jackson,* 527 F.Supp. 1004, 1006 (W.D.Pa.1981).

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence. *See Darden v. United States,* 18 Cl.Ct. 855, 859 (1989). In determining whether the plaintiff has met this burden, the court is sometimes required to look to matters outside of the pleadings. *See In re Swine Flu Immunization Products Liability Litigation,* 880 F.2d 1439 (D.C.Cir. 1989).

### B. Late Filing of Administrative Complaint

#### 1. Introduction

As a general rule, parties "must exhaust prescribed administrative remedies before

---

**2.** It is worth noting that the section dealing with the 15–day requirement was printed in both bold type and in all-capital letters. *See* Mot. to Dis., Ex. 4

seeking relief from federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144–45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Thus, a party must timely file all applicable administrative complaints and appeals in order to bring a claim in federal court. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C.Cir.1997). Moreover, "[b]ecause untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it." *Id.*

In this case, the plaintiff admits that she filed her administrative complaint three days after the 15–day time frame had elapsed. *See* Compl. at 3; *see also* Mot. to Dis. at 2; *see also* 29 C.F.R. § 1614.105(d) (stating 15–day requirement). Accordingly, the defendant has met its initial burden of proving the plaintiff filed late.

█ The plaintiff, though, can overcome the defense of untimely exhaustion by pleading facts that support an equitable exception to this rule. *See Bowden*, 106 F.3d at 437; *Childs v. Runyon*, 1996 WL 1186995, *6 (D.D.C.1996). The plaintiff contends that this court should deny the defendant's motion to dismiss because of the doctrine of equitable tolling. *See* Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. to Dis. ("Pl.'s Opp'n.") at 1. Specifically, the plaintiff argues that the court should not bar her claim because: (1) she could not file a timely appeal because she was tending to her dying grandmother; and (2) she thought she had 45 days to file, not 15.[3] *See* Compl. at 3; Pl.'s Aff. in Supp. of Opp'n of Def.'s Mot. to Dis. ("Pl.'s Aff.") at 2. For the reasons discussed below, the court holds that the plaintiff has not met her burden of establishing that the doctrine of equitable tolling should apply. Thus, she has failed to exhaust her administrative remedies. Accordingly, the court lacks subject-matter jurisdiction and will dismiss the case.

### 2. Equitable Tolling

#### a. Legal Standard

The requirement for filing a timely administrative complaint is "not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."[4] *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *see also Bowden*, 106 F.3d at 437. The court's power to toll the statute of limitations,

---

**3.** In its reply supporting its motion to dismiss, the defendant argues that this court should not consider the plaintiff's first justification for late filing—the fact that the plaintiff had to tend to her sick grandmother—because the plaintiff never raised this justification at the administrative level. *See* Def.'s Reply to Pl.'s Opp'n to Mot. to Dis. at 4–6. The court rejects the defendant's argument in the interests of equity and fairness. Because the defendant has raised this argument only in its reply, the plaintiff has not had and will not have an opportunity to respond. *See, e.g., In re O & G Carriers, Inc. v. Smith Energy 1986—AP Partnership*, 1995 WL 359983, *2 (S.D.N.Y.1995) ("It is well settled that an argument cannot be made for the first time in a reply brief."); *Murphy v. Village of Hoffman Estates*, 1999 WL 160305, *2 (N.D.Ill.1999). Furthermore, the defendant was clearly on notice from the plaintiff's complaint that the plaintiff might well assert this justification for tolling. In her complaint, the plaintiff explained, "The reason for the Plaintiff's failure to timely file her EEO complaint within the

time frame allowed was two fold: (1) Plaintiff's grandmother was dying from Terminal Colon Cancer and (2) Plaintiff who at the time [sic] was under the belief that she had forty five days in which to file her complaint." Compl. at 3. While raising this excuse in the complaint does not necessarily mean the plaintiff raised it at the administrative level, it does mean that the defendant could have posited its argument in its motion to dismiss rather than in its reply.

**4.** In the past, there had been confusion as to whether the doctrine of equitable tolling applied to suits against the government because of sovereign immunity considerations. The Supreme Court, though, recently held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

however, "will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Secretary of the Army*, 845 F.2d 1051, 1057 (D.C.Cir.1988). Thus, the plaintiff will not be afforded extra time to file without exercising due diligence, and the plaintiff's excuse must be more than a "garden variety claim of excusable neglect." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

### b. Application of Legal Standard

█ Unfortunately for the plaintiff, this case does not even rise to the level of excusable neglect. Quite simply, there was no good reason for the plaintiff to have missed the 15–day filing deadline.

The plaintiff contends that because of her grandmother's illness and her own mistaken understanding that she had 45 days to file instead of 15, she was unable to timely file her formal administrative complaint with Treasury's Regional Complaints Center. *See* Compl. at 3; *see also* Mot. to Dis., Ex. 7. In support of her position, the plaintiff relies on several cases in which courts in this circuit have applied the doctrine of equitable tolling. These cases, however, have marked factual differences from the case at bar.

For example, the plaintiff cites extensively to *Jarrell v. United States Postal Service*, 753 F.2d 1088 (D.C.Cir.1985). Although the court tolled the deadline for an administrative complaint in *Jarrell*, the plaintiff there was proceeding *pro se*. Moreover, the *Jarrell* plaintiff alleged that he did not contact an EEO counselor in a timely manner since he had relied on the assurances of a different EEO officer that the officer would attempt to have certain information expunged from the plaintiff's employment records. "The failure to contact an EEO Counselor within thirty days of the alleged discriminatory event may be

excused if it is the result of justifiable reliance on the advice of another government officer." *Id.* at 1092.

In addition, the plaintiff inappropriately relies on *Brooks v. Derwinski*, 741 F.Supp. 963 (D.D.C.1990). In that case, the plaintiff was proceeding *pro se* and *in forma pauperis*, and filed only one day after the 30–day deadline.[5] *Id.* Finally, Ms. Battle cites to *Bethel v. Jefferson* for the proposition that Congress, in enacting the 1972 amendments to Title VII, "expressed its displeasure with strict adherence to exhaustion requirements when the employee is forced to act with '*no certainty of the steps required to exhaust such remedies.*'" 589 F.2d 631, 641–42 (D.C.Cir.1978) (emphasis added).

In stark contrast, the plaintiff at bar was not proceeding *pro se*, but was represented from the beginning of the administrative process by counsel, Mr. Carter. On January 24, 1998, Mr. Carter sent a letter to the plaintiff's supervisor, George Shue, to argue against the "Notice of Proposed Removal." *See* Mot. to Dis., Ex. 5. Mr. Carter also attended the February 13 meeting with Mr. Shue in a further effort to dissuade him from recommending the plaintiff's removal from her position. *See* Compl. at 3. As noted *supra* in footnote 1, the plaintiff also had a second representative, Dennis Phelps, at the February 13, 1998 meeting. *See* Mot. to Dis., Ex. 2. Moreover, the plaintiff's formal administrative complaint listed Mr. Carter as her representative, and, in fact, he signed the administrative complaint and presumably helped prepare it. *See* Mot. to Dis., Ex. 6.

It follows, then, that because the plaintiff had legal representation from the start of this administrative proceeding, the fact that the plaintiff, her sister and her mother had to tend to the plaintiff's sick grandmother during this period should have little or no bearing on her lateness. *See* Pl.'s

---

5. In this case, the plaintiff filed three days later than the 15–day deadline, and thus her lateness amounted to 20 percent of the filing period. In *Brooks*, the *pro-se, in forma pau-* *peris* plaintiff filed one day later than the 30–day deadline, lateness that amounted to about three percent of the filing period.

Aff. at 1. At a minimum, the plaintiff's counsel should have known about the appropriate time requirements for this administrative action, particularly since he began representing the plaintiff months before late March, when she received the "Right to File" notice.

Moreover, the plaintiff's claim that she thought she had 45 days to file her formal complaint rings hollow. On at least three separate occasions, the plaintiff was informed of the 15–day time period. First, during her March 16, 1998 meeting with EEO Specialist Arthur Hicks, the plaintiff initialed every paragraph on the "EEO Counselor Checklist", including paragraph # 9, which talks about the 15–day requirement, to indicate that she had discussed that paragraph with Mr. Hicks. *See* Mot. to Dis., Ex. 3. Second, on March 28, the plaintiff received the "Notice of Right to File a Discrimination Complaint Under 29 CFR Part 1614" from Mr. Hicks. This Notice included the 15–day requirement, which was printed in bold and in all-capital letters. *See* Mot. to Dis., Ex. 4. Third, about one week before the 15–day limit had elapsed, Mr. Hicks called the plaintiff to remind her of the deadline, and she said that she would "take care of it." *See* Mot. to Dis., Ex. 5. Thus, the record is clear that unlike in *Bethel,* the plaintiff and her attorney knew or should have known about the 15–day time limit.

In sum, the plaintiff's justifications for missing the administrative deadline do not rise to the level required by this circuit for application of the equitable tolling doctrine. *See, e.g., Mondy,* 845 F.2d at 1057; *Hosey v. Slater,* 1999 WL 1215953, *1 (D.C.Cir.1999);*Wilkins v. Daley,* 49 F.Supp.2d 1, 2 (D.D.C.1999). The plaintiff, who was represented by counsel for the duration of the administrative proceeding, has failed to show that she acted with sufficient diligence to seek refuge in an equitable toll. *See Wilkins,* 49 F.Supp.2d at 2. Furthermore, the plaintiff has demonstrated no affirmative misconduct or imparting of misinformation on the govern-ment's part that would justify a toll in this situation. *See Washington v. Washington Metropolitan Area Transit Authority,* 160 F.3d 750, 753 (D.C.Cir.1998).

## IV. CONCLUSION

For all of these reasons, the court will not equitably toll the administrative deadline. Accordingly, the plaintiff has failed to exhaust her administrative remedies, and the court lacks subject-matter jurisdiction over this case. Therefore, the court will grant the defendant's motion to dismiss. An Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of September 2000.

### *ORDER*

GRANTING THE DEFENDANT'S
MOTION TO DISMISS

For the reasons stated in the court's Memorandum Opinion issued separately and contemporaneously this _____ day of September, 2000, it is

**ORDERED** that the defendant's motion to dismiss shall be and hereby is **GRANT-ED.**

**SO ORDERED.**