**UNITED STATES of America, Plaintiff,**

**v.**

**The INTRADOS/INTERNATIONAL MANAGEMENT GROUP, et al., Defendants.**

**Civil Action No.: 01–0769 (RMU).**

United States District Court, District of Columbia.

Aug. 2, 2002.

Lydia K. Griggsby, U.S. Attorney's Office, Washington, DC, for plaintiff counter-defendant.

Alan David Strasser, Kutak Rock, Washington, DC, for defendants counter-claimants.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

This action involves our nation's privatization of foreign commerce markets. The United States of America ("the plaintiff" or "the government") brings suit under the False Claims Act ("FCA"), as amended, 31 U.S.C. § 3729 *et seq.*, and under the common-law theories of payment-by-mistake, unjust enrichment, and fraud. The defen-

dants have filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 9(b) for failure to plead fraud with particularity and 12(b)(6) for failure to state a claim on which relief could be granted since the defendants' accounting invoices are not fraudulent and since the applicable statutes of limitations bars the plaintiff's claims. Upon consideration of the parties' submissions and the relevant law, the court grants in part and denies in part the defendants' motion to dismiss.

## II. BACKGROUND

### A. Factual Background

This nation has financed privatization policy and transaction initiatives involving foreign commerce markets since the early 1980s. Compl. ¶ 7. In collaboration with host nations, the United States developed privatization programs in countries such as Poland, Honduras, and Jamaica. *Id.* In that vein, the United States specifically supports initiatives to privatize civilian and defense industries in the newly independent states of the former Soviet Union. *Id.* ¶ 8. As such, the plaintiff contracted with private companies to provide the technical assistance necessary to implement its privatization project in these new independent states of the former Soviet Union. *Id.*

In connection with this effort, the plaintiff entered into a series of contracts with the Intrados Management Group, Fariborz Ghadar, Margaret Ghadar, and Liz De Tuerk Ghadar (the "defendants") to have them provide training services in several of the new independent states of the former Soviet Union. *Id.* ¶ 9. At issue here is contract number NIS110–005–C–00–4011–00, which was issued to the defendants in 1994 for the amount of $8,165,855.00 ("contract"). *Id.* The contract provides that the defendants would train mid-level government officials on the privatization of markets and other economic reforms that would ease the transition from command-and-control economies to market-based systems that are premised on notions of capitalism. *Id.*

According to the contract, along with the awarded amount of $8,165,855.00, the plaintiff authorized the defendants to seek reimbursement from the plaintiff for any allowable costs incurred by the defendants in connection with the contract work. *Id.* ¶¶ 9–10; Defs.' Mot. to Dismiss, Ex. A (Contract § B). The contract requires the defendants to follow certain rules when submitting invoices for reimbursement, including submitting invoices calculated under mathematical formulas prescribed by the contract. *Id.* at 3. Accordingly, the defendants must submit invoices to the plaintiff that are calculated as a multiple of direct labor and the plaintiff will reimburse the defendants based on the provisional rates enumerated in the contract.[1] *Id.*

Section 52.216–7 of the Federal Acquisition Regulation, as amended, 48 C.F.R. § 52.216–7, defines the term "allowable

---

1. Section B.9. of the contract provides:

Pending establishment of revised provisional or final indirect cost rates for each of the contractor's accounting periods which apply to this contract, provisional payments on account of allowable indirect costs shall be made on the basis of the following provisional rates as recommended by the pre-award survey:

| Description | Rate | Base | Period | |
|---|---|---|---|---|
| Fringe Benefits | 34.77% | | Direct Salaries (DS) | Contract Term |
| Overhead | 94.86% | | DS + Fringe Benefits | Contract Term |
| General & Administrative | 15.80% | | Total Costs | Contract Term |

cost," which is incorporated into the contract's terms.[2] Compl. ¶ 11. The contract also contains the plaintiff's procurement regulation.[3] Id. ¶ 12.

The plaintiff pleads that from November 1994 to October 1996, the defendants routinely and knowingly submitted false or fraudulent invoices and an incurred cost submission to the plaintiff, seeking reimbursement for costs that were not allowed under the contract and the applicable federal procurement regulations. Id. ¶¶ 13–14. Specifically, the plaintiff pleads that the defendants submitted false or fraudulent claims totaling $574,669.59 in unallowable costs[4] on the following dates: November 25, 1994, December 8, 1994, December 13, 1994, March 15, 1995, April 10, 1995, and September 30, 1996. Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 18.[5] In addition, the complaint states that on October 22, 1996, the defendants submitted a false incurred cost submission to the plaintiff regarding the improper expenditures. Compl. ¶ 15.

The plaintiff's complaint further asserts that the individual defendants generated false corporate records, general ledgers,

**2.** The regulation provides in pertinent part that:

(1) For the purpose of reimbursing allowable costs, ... the term "costs" includes only: (i) Those recorded costs that ... the contractor has paid ... for items or services purchased directly for the contract; (ii) ... [c]osts incurred, but not necessarily paid for-

(A) Supplies and services purchased directly for the contract ... and financing payments to subcontractors;

(B) Materials issued from the contractor's inventory and placed in the production process for use on the contract;

(C) Direct labor;

(D) Direct travel;

(E) Other direct in-house costs; and

(F) Properly allocable and allowable indirect costs ...

48 C.F.R. § 52.216–7; *see also* Mot. to Dismiss, Ex. A ("Contract §§ B.7–B.12.")

**3.** The plaintiff's procurement regulation provides the following instructions for the documentation of payments:

(a) Claims for reimbursement or payment under this contract must be submitted to the Paying Office indicated in the schedule of this contract.

(2) The fiscal report [for reimbursement claims] shall include a certification, signed by an authorized representative of the Contractor, as follows: The undersigned hereby certifies to the best of my knowledge and belief that the fiscal report and any attachments have been prepared from the books and records of the Contractor in accordance with the terms of this contract and are correct: the sum claimed under this contract is proper and due all the costs of contract performance (except as herewith reported in writing) have been paid, or to the extent allowed under the applicable payment clause will be paid currently by the Contractor when due in the ordinary course of business; the work reflected by these costs has been performed, and all quantities and amounts involved are consistent with the requirements of this Contract; all required Contracting Officer approvals have been obtained; and appropriate refund to USAID will be made promptly upon request in the event of disallowance of costs not reimbursable under the terms of this contract.

48 C.F.R § 752.7003 (Documentation for Payment).

**4.** The court notes that only $574,669.59 of the reimbursed costs is in dispute herein.

**5.** The plaintiff alleges that the following unallowable costs were submitted by the defendants: $27,688.40 for an unauthorized consultant; $13,330.00 for embryo surgery; $68,721.00 for employee salaries in excess of government regulations; $100,000.00 each for consulting and personal renting expenses; $144,386.00 for litigation fees; $30,000.00 for personal rental expenses; $6,596.32 for legal fees and personal rental expenses; $3,000.00 for legal fees payment to Iran; $5,000.00 for investigation expenses; $65,052.93 for reclassifying commercial costs to overhead; $13,542.69 for personal travel; $2,084.00 for retail purchases, and; $268.00 for home repairs. Compl. ¶ 15.

and other accounting data that concealed the personal nature of the unallowable costs and accounted for them as "salaries," "overhead," or "travel allowances." *Id.* ¶¶ 17–18. As a result, the plaintiff states that it did not learn of the false claims until a Defense Contract Agency audit ("DCA audit") was performed in 1998. *Id.* ¶ 18.

According to the plaintiff, each invoice submitted by the defendants contains an implied certification that the sum claimed was proper and due under the contract pursuant to the plaintiff's procurement regulations. *Id.* ¶ 19. The plaintiff charges that the implied certifications submitted by the defendants are, therefore, false because they contain charges for personal items not allowed under the contract. *Id.* ¶ 20.

### B. Procedural History

The plaintiff commenced this action by filing its complaint on April 10, 2001. More than one year later and after seven joint motions for extensions of time,[6] the defendants filed their motion to dismiss the complaint on May 3, 2002, asserting that the invoices are not false as a matter of law, the complaint is not pled with the particularity required by Federal Rule of Civil Procedure 9(b), and that the applicable statutes of limitations bars the plaintiff's claims.

### III. ANALYSIS

#### A. Legal Standards

##### 1. Federal Rule of Civil Procedure 12(b)(6)

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. FED.R.CIV.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. FED.R.CIV.P. 8(a)(2); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *reversed on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The plaintiff need not plead the elements of a prima-facie case in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that a plaintiff in an employment-discrimination case need not establish her prima-facie case in the complaint); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir.2000). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C.Cir.1996). In deciding such a motion, the court must accept all the complaint's well-plead factual allegations as true and draw all reasonable inferences in the non-movant's favor. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683.

##### 2. Federal Rule of Civil Procedure 9(b)

 An FCA complaint must comply with Federal Rule of Civil Procedure 9(b)'s

---

6. It should be noted that the court generally does not grant motions for extensions of time without a showing of "good cause" demonstrated by the movant(s). Standing Order ¶ 3. In the case at bar, the court granted each of the motions pursuant to the parties' joint representations that they were nearing settlement and needed more time to advance those settlement prospects. Apparently no settlement was reached between the parties, which resulted in the defendants' instant motion to dismiss.

requirement that circumstances constituting fraud or mistake be stated with particularity. FED.R.CIV.P. 9(b); *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551 (D.C.Cir.2002). The circumstances that must be pled with specificity are matters such as the time, place, and contents of the false representations, since the rule is chiefly concerned about the elements of fraud. *Totten*, 286 F.3d at 551. (citing 5 Wright & Miller, Fed. Practice & Proc. § 1297 (2d ed.1990)).

■ The particularity requirement, however, does not abrogate the requirements of Rule 8, and it should be harmonized with the general directives in subdivisions (a) and (e) of Rule 8 that the pleadings contain a short and plain statement of the claim or defense and that each averment be simple, concise, and direct. FED.R.CIV.P. 8; *United States ex rel. v. Cannon*, 642 F.2d 1373, 1386 (D.C.Cir.1981). Furthermore, a plaintiff need not allege with specificity each element of his cause of action if it contains allegations from which an inference may be drawn that the plaintiff will produce evidence on the essential elements. *United States v. Bouchey*, 860 F.Supp. 890, 893 (D.D.C.1994) (Harris, J.).

In sum, to satisfy the requirements of Rule 9(b), an FCA complaint must set forth an adequate factual basis for the plaintiff's allegations that the defendant-contractor(s) submitted false claims (or false statements to get false claims paid), including a more detailed description of the specific falsehoods that are the basis for its suit. *Totten*, 286 F.3d at 551.

### 3. The False Claims Act

The FCA imposes liability for civil penalties and treble damages on anyone who submits or causes false claims to be submitted to the federal government. 31 U.S.C. § 3729. The FCA defines "claim" to include a request for payment made to a contractor, grantee, or other recipient if the federal government provides any portion of the money or property that is requested or demanded, or if the federal government will reimburse such contractor, grantee, or other recipient for any portion of the money or property that is requested or demanded. 31 U.S.C. § 3729(c).

■ Further, the statute proscribes only false claims, that is, actual demands for money or property, and false records or statements used to induce such claims. 31 U.S.C. § 3729(a)(2). The FCA attaches liability to the claim for payment not to the underlying activity. *Totten*, 286 F.3d at 551. For cases brought under the FCA, section 3732 is the provision that governs the court's analysis of personal jurisdiction and venue. 31 U.S.C. § 3732(a). Section 3732(a) of the False Claims Act states that a claim brought under that Act "may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred". *Id.*

### B. The Plaintiff's Complaint Satisfies Rule 9(b)

The court determines that the plaintiff's complaint alleging circumstances constituting fraud is sufficiently pled with particularity and, thus, complies with Federal Rule of Civil Procedure 9(b). FED.R.CIV.P. 9(b). The defendants, however, argue that although the plaintiff's complaint contains adequate detail of the allegations against the corporate defendant (defendant Intrados), it fails to plead fraud with the requisite particularity as to the individual defendants. Mot. to Dismiss at 12.

As indicated earlier, the plaintiff's complaint alleges on all four counts that the defendants presented or caused to be presented to the United States claims for payment of costs that they knew or should

have known were false, fictitious, or fraudulent because the claims were for unallowable and unauthorized costs. Compl. ¶ 23. Specifically, the plaintiff alleges that from November 1994 to October 1996, the individual defendants knowingly submitted false claims to the plaintiff. *Id.* ¶¶ 23–24. In addition, attached exhibits indicate that the defendants addressed and sent the suspect invoices to the plaintiff in Washington, D.C. for payment. *Id.*, Exs. A–F. Finally, the complaint provides a detailed listing of the unallowable costs totaling $574,669.59 that were allegedly discovered after a DCA audit and subsequent Department of Justice ("DOJ") investigation. *Id.* ¶ 15.

■ Following *Bouchey*, this court rules that the plaintiff need not allege with specificity every element of its cause of action if the complaint contains allegations from which an inference may be drawn that the plaintiff will produce evidence on the essential elements. *Bouchey*, 860 F.Supp. at 893.[7] This court determines that by naming the individual defendants, stating the time period the alleged fraud took place, where the fraud took place, and specifically highlighting the alleged unallowable costs, the plaintiff has provided an adequate factual basis for the allegations of fraud under Rule 9(b). *Totten*, 286 F.3d at 551. Therefore, the court denies the defendants' motion to dismiss on this ground.

## C. The Plaintiff Pleads Sufficient Facts to Support Its Claim That the Invoices Are False Under the False Claims Act

■ Artfully, the defendants move to dismiss the plaintiff's complaint pursuant to Rule 12(b)(6) on the ground that the submitted invoices were not false under the FCA as a matter of law because they were in accordance with the required calculations. Mot. to Dismiss at 5. The court concludes that the plaintiff has sufficiently pled facts in support of its claims that the defendants submitted false payment demands under the FCA.

To advance their argument, the defendants assert that a "careful" reading of the complaint illustrates that the defendants improperly submitted invoices that calculate reimbursement claims for overhead costs based on direct salaries, and that the complaint does not attack the costs for direct salaries the defendants submitted under the contract. Mot. to Dismiss at 6. The defendants therefore deduce that the calculation of the overhead on the invoices follows from mathematical calculation provided by the contract. *Id.*

The defendants further argue that the plaintiff's complaint rests on the false premise that the invoices are untruthful because they do not conform to the requirements of the contract. Mot. to Dismiss at 6. In the same breath, however, the defendants point out that the contract requires the defendants to submit reimbursement invoices that contain mathematically calculated figures, rather than any actual costs incurred, and only the incurred cost report shows the actual costs that the defendants bore. *Id.* The defendants contend that the calculation of the overhead in the invoices conforms to the mathematical formulas provided in the contract and, thus, are not false. *Id.* at 7.

---

7. While the *Bouchey* court went on to say that a claim must also state which individual made the misrepresentations, that court was citing to an earlier FCA case in which a plaintiff failed to indicate which members of a Senator's staff were involved in fraudulent activity or the exact wrong they had committed. *Bouchey*, 860 F.Supp. at 893 (citing *United States v. Cannon*, 642 F.2d 1373, 1385 (D.C.Cir.1981)). Not only are the individual defendants in the instant case named in the complaint, but the plaintiff also includes a detailed list of the alleged wrongs they committed. Compl. ¶ 15.

The court is not persuaded by the defendants' argument and the cases cited by the defendants compel no different result. To wit, the defendants' cited authority merely indicates that a plaintiff must advance some evidence that a defendant made a knowing false statement to induce payment. Mot. to Dismiss at 5 (citations omitted). While the court agrees with this basic principle, the defendants herein do not contend that they misinterpreted the contract when submitting the invoices to the plaintiff for reimbursement. Rather, the defendants squarely assert that their invoices are not false because they complied with the contract. Mot. to Dismiss at 3. The defendants state that they calculated the reimbursement amounts in the submitted invoices using a mathematical calculation specified in the contract based on the number of days worked by individuals, plus an overhead rate. *Id.* As such, the court need not consider the defendants' argument when ruling on the defendants' motion to dismiss.

Focusing on the plaintiff's position, the complaint avers that the defendants' invoices submitted to the government for payment contain figures that were obtained by calculating unallowable costs. Compl. ¶ 13. Because the court views the complaint's allegations as true when considering the defendants' instant Rule 12(b)(6) challenge, *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683, if proven that the alleged wrongful expenses were included in the direct salaries and then calculated to obtain an amount that was submitted to the government for reimbursement, the defendants' submitted invoices would indeed violate section 3729 of the FCA. 31 U.S.C. § 3729. While the calculations are proven as a mathematical certainty, the expenses used in the calculations must comply with the allowable reimbursement costs as provided by the contract. 48 C.F.R. § 52.216–7; Mot. To Dismiss, Ex.

A (Contract §§ B.7–12). The defendants maintain that because the complaint does not attack the individual defendants' direct salaries used in the calculations, the plaintiff has failed to state a claim under the FCA. Mot. to Dismiss at 6. The court rejects this reasoning and rules that using false direct salaries in a calculation and then incorporating that false number in an invoice, and subsequently submitting the invoice to the government for reimbursement, would make the invoice a false claim under the FCA. 31 U.S.C. § 3729(a)(2). Because the plaintiff has pled sufficient facts to support its claim that the invoices are false under the FCA, the court denies the defendants' motion to dismiss on that basis.

## D. The Court Grants in part and Denies in part the Defendants' Motion to Dismiss Because Some of the Plaintiff's Claims Are Time Barred

As noted earlier, the plaintiff alleges that from November 1994 to October 1996, the defendants submitted six false invoices and one incurred cost submission to the plaintiff, seeking reimbursement for costs that were not allowed under the contract and the applicable federal procurement regulations. Compl. ¶ 13. The defendants move the court to dismiss all four counts arguing that these counts are time barred. Mot. to Dismiss at 7, 10. The court disagrees with the defendants as to the dismissal of the plaintiff's claims regarding the incurred cost submission, the two invoices dated on or after April 10, 1995, and unjust enrichment. The court, however, agrees with the defendants regarding dismissal of the plaintiff's claims concerning the four invoices submitted before April 10, 1995 along with the common-law claims of fraud and payment-by-mistake.

### 1. Limitations Period Provided by the False Claims Act

█ The FCA provides that:

[a] civil action under section 3730 may not be brought: (1) more than 6 years after the date on which the violation of section 3729 is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731. Also, under the FCA, the limitations period begins to run on the date the claim is made, or if a claim is paid, on the date of payment. *United States v. Rivera*, 55 F.3d 703 (1st Cir. 1995); *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148 (2d Cir.1993); *United States v. Vanoosterhout*, 898 F.Supp. 25 (D.D.C. 1995) (Robertson, J.) (citing *Rivera* and *Kreindler & Kreindler*).

The plaintiff alleges that the defendants violated section 3729 by submitting to the government false invoices seeking unallowable reimbursements. Compl. ¶¶ 22–26. The plaintiff's claims relating to invoices submitted more than six years before the complaint was filed, however, unless the plaintiff can show that they fit within the tolling period defined in section 3731(b)(2). 31 U.S.C. § 3731(b)(2).

In support of its position that the claims are time barred, the defendants point to the undisputed fact that the plaintiff learned of the false claims after completion of the DCA audit on January 7, 1998. Mot. to Dismiss at 8 (citing Compl. ¶ 18). As such, the defendants submit that the plaintiff's filing of the instant complaint on April 10, 1995 lies outside the three-year window permitted by the FCA and the court must, therefore, dismiss the com-

plaint. Mot. to Dismiss at 10; *Vanoosterhout*, 898 F.Supp. at 30.

Moreover, the defendants argue that although the plaintiff may contend that the DCA was not the one "charged with the responsibility to act in the circumstances" as required by section 3731(b)(2), given the plaintiff's knowledge of the defendant's alleged violations of the FCA revealed by the DCA audit, the plaintiff bore the responsibility to act diligently on that knowledge and pursue its case in court. Mot. to Dismiss at 9.

The plaintiff offers the following arguments to challenge the defendants' assertion that the claims are time barred under the FCA: (1) that the plaintiff filed its complaint within six years of the date the defendants submitted the incurred cost submission incorporating the alleged false 1994 invoices; (2) that the two invoices dated on or after April 10, 1995 are timely under section 3731(1) of the FCA; (3) that the statute of limitations was tolled for the four claims submitted before April 10, 1995; and, (4) that the common-law claims are timely. Pl.'s. Opp'n. The court addresses the plaintiff's arguments in turn.

## 2. Incurred Cost Submission

■ The court determines that the defendants' incurred cost submission (hereinafter "ICS") survives the relevant statute of limitations. According to the plaintiff, the ICS incorporates all invoices for 1994 and the parties do not dispute that the defendants submitted the ICS on October 22, 1996. Pl.'s Opp'n at 17. The ICS may not be a demand for money but, according to the plaintiff, the ICS contains detailed claims for reimbursement to justify claims for the 1994 contract year. Pl.'s Opp'n at 15. Thus, viewing all the facts asserted in the plaintiff's complaint as true under Rule 12(b)(6), *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683, the court concludes that the defendants' ICS could be a false record or state-

ment used to induce government payment and that such a statement would be proscribed by the FCA. *See* 31 U.S.C. § 3729(a)(2); Compl. ¶ 13. That hurdle crossed, the court notes that the limitations period for the plaintiff to assert a legal action challenging the defendants' ICS does not end until October 22, 2002. 31 U.S.C. § 3731(b)(1). As noted previously, the plaintiff filed the complaint on April 10, 2001. Therefore, the court holds that the plaintiff's claim involving the ICS survives the six year limitations period enumerated in section 3731(b)(1) and thereby denies the defendants' motion to dismiss on that ground.

### 3. Invoices Dated on or After April 10, 1995

■ The court deems the invoices dated April 10, 1995 and September 30, 1996 viable under the six-year limitations provision of section 3731(b)(1). *Id.* The defendants mistakenly argue that these two claims are subject to a three-year limitations period as provided under section 3731(b)(2) because the plaintiff knew of material facts giving way to its right of action after the completion of the DCA audit on January 7, 1998. Mot. to Dismiss at 10. Contrary to the defendants' belief, section 3731(b)(2) is a tolling provision that does not limit the amount of time to file a complaint from six to three years when a plaintiff receives knowledge of material facts. 31 U.S.C. § 3731(b)(2); *United States v. Ettrick Wood Products, Inc.,* 683 F.Supp. 1262 (W.D.Wis.1988). Section 3731(b) plainly states "an action under 3730 may not be brought ... more than six years after the date of the violation or ... more than three years after the date when facts material to the right of action are known ... *whichever* occurs last." 31 U.S.C. § 3731(b) (emphasis added). Therefore, without having to do the math, it is clear that the plaintiff brought these

two claims within six years of the time when the alleged violation of section 3729 occurred. Accordingly, both claims survive the defendants' motion to dismiss.

### 4. The Statute of Limitations is Not Tolled for the Invoices Submitted Before April 10, 1995

Next, the plaintiff proffers that the statute of limitations is tolled as to its claims regarding the defendants' invoices submitted before April 10, 1995 for two reasons. First, because the defendants fraudulently concealed material facts giving rise to these claims. Second, because the DOJ, the responsible government official charged with the responsibility to act on behalf of the government, was not aware of the facts surrounding this case until October 26, 1998. Pl.'s Opp'n at 19, 22. The court disagrees with the plaintiff and instead determines that the statute of limitations is not tolled for the four invoices submitted after April 10, 1995.

#### a. Equitable Tolling

The plaintiff argues that the common-law doctrine of equitable tolling should apply to all the invoices submitted before April 10, 1995 because the defendants fraudulently concealed the material facts necessary for the government to learn of the alleged fraud. *Id.* at 19. The plaintiff refers to the Supreme Court's decision in *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), stating that the equitable tolling doctrine is read into every federal statute of limitations. Pl.'s Opp'n at 19. A closer read of the Supreme Court's decision in *Holmberg,* however, reveals that the clock does not start running until after the plaintiff had discovered, or failed with reasonable diligence to discover the alleged deception. *Holmberg,* 327 U.S. at 397, 66 S.Ct. 582.

■ Assuming *for the moment* that equitable tolling does apply here, the D.C. Circuit instructs that when a defendant fraudulently conceals the basis of a plaintiff's cause of action, the statute of limitations is tolled until the time that a reasonably diligent plaintiff could have discovered the elements of his claim. *Hohri v. United States,* 782 F.2d 227, 246 (D.C.Cir.1986), *vacated and remanded on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Further, due diligence is a fact-specific judgment in each case as to what the court expects a reasonable plaintiff to do in uncovering the elements of his claim. *Id.*

■ Along this line of reasoning, the court finds that the plaintiff did not exercise due diligence in uncovering the fraud and the complaint's facts do not reveal otherwise. *Generally* Compl. Indeed, the DCA audit was completed on January 7, 1998, but the plaintiff's complaint was filed more three years later on April 10, 2001. Compl. ¶ 18. The court is aware of the D.C. Circuit's warning expressed in *Richards v. Mileski,* 662 F.2d 65, 73 (D.C.Cir. 1981), that

> "[t]here is an inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense ... [in that] the complaint sometimes discloses such defects on its face, [yet] it is more likely that a plaintiff can raise factual setoffs to such an affirmative defense."

*Id. Richards* went on to say that "[w]e do not hold that the use of a motion to dismiss is always improper to raise a statute of limitations defense." *Id.* As noted by this court before, however, the court's power to toll a statute of limitations is exercised only in extraordinary and carefully circumscribed instances. *Battle v. Rubin,* 121 F.Supp.2d 4, 8 (D.D.C.2000) (citing *Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057

(D.C.Cir.1988)). Also noted by this court in *Battle* is the principal that a court will not afford the plaintiff extra time to file the complaint without exercising due diligence and the plaintiff's excuse must be more than a "garden variety claim of excusable neglect." *Id.* at 8 (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).

The case before the court is distinguishable from the overwhelming line of authority that suggests that a plaintiff's diligence " 'cannot be decided at this stage of the proceedings,' " *Id.* n. 13 (quoting *Glus v. Brooklyn E. Dist. Terminal,* 359 U.S. 231, 235, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959)), because here the plaintiff itself admits that it knew of the material facts giving rise to its claims in a time sufficient to file its complaint before the expiration of the statute of limitations. Compl. ¶ 18. Moreover, the court cannot toll the applicable statute of limitations because the plaintiff has not proffered any excusable neglect as a basis for its failure to assert its claims in a timely manner. *Battle,* 121 F.Supp.2d at 8. As indicated earlier, it is undisputed that the plaintiff filed its complaint three years after the DCA audit's release. Compl. ¶ 18. As such, the court dismisses the plaintiff's claim relating to the invoices submitted before April 10, 1995 as time barred.

**b. Responsible Government Official**

The plaintiff also argues that the claims pertaining to the invoices submitted before April 10, 1995 are timely because the complaint was filed within three years of the date that DOJ realized the invoices were false. Pl.'s Opp'n at 20. The plaintiff reasons that even though section 3731(b)(2) does not define "the official of the United States charged with the responsibility" to bring the instant action, courts have interpreted the phrase to mean a DOJ official. *Id.* at 21 (citing to

*United States v. Tech Refrigeration*, 143 F.Supp.2d 1006, 1009 (N.D.Ill.2001)). As such, the plaintiff contends that because DOJ did not learn of the facts regarding the alleged misdeeds of the defendants until DOJ commenced an FCA investigation on October 26, 1998, the clock did not start running until that date. *See* Pl.'s Opp'n at 22. The court rejects the plaintiff's reasoning.

The plaintiff's aforementioned legal authority does not support the proposition for which it is cited. Specifically, *Tech Refrigeration* states that the statute of limitations does not begin to run only when a DOJ official actually knows of the material facts, rather the statute provides that the limitations period begins to run when material facts are known or reasonably should be known to DOJ. *Tech Refrigeration*, 143 F.Supp.2d at 1009; *but see* Pl.'s Opp'n at 21. Moreover, for purposes of section 3731(b)(2), the relevant question is *when* DOJ knew or reasonably should have known about the fraud. *Tech Refrigeration*, 143 F.Supp.2d at 1009 (citing *United States v. Village of Island Park*, 791 F.Supp. 354, 361 (E.D.N.Y.1992)) (emphasis added). Much like the equitable tolling doctrine previously described, the analysis here assumes the party charged with the responsibility of uncovering the fraud will do so with due diligence. *United States v. Uzzell*, 648 F.Supp. 1362, 1367 (D.D.C.1986) (Green, J.).

Regardless of whether DOJ is the responsible party charged with uncovering the fraud, the court determines that DOJ knew or should have known of material facts giving rise to the plaintiff's cause of action at the time when the DCA audit was released on January 7, 1998.[8] Indeed, the statute of limitations began to run on the DCA audit's release date and, thus, expired on January 7, 2001. 31 U.S.C. § 3731. The plaintiff filed its complaint on April 10, 2001, three months too late. *Id.* Accordingly, the court dismisses the four claims filed before April 10, 1995 as time barred.

### 5. Common–Law Claims

The various limitations periods applicable to the plaintiff's common-law claims are set forth in 28 U.S.C. § 2415. This statute provides that every action for money damages brought by the federal government that is founded on any contract, express or implied in law or fact, is barred unless the complaint is filed within six years from the point when the right of action accrues. 28 U.S.C. § 2415(a). A three-year limitations period applies for money damages claims arising from a tortious act. 28 U.S.C. § 2415(b). Further, the limitations period is subject to tolling where the federal government did not know and could not reasonably have known the basis for its claim. 28 U.S.C. § 2416(c).

#### a. Unjust Enrichment

 The defendants suggest that the plaintiff's unjust enrichment claim is time barred because it is based in tort and subject to the three-year limitations period provided under 28 U.S.C. 2415(b). Mot. to Dismiss at 11. The court disagrees, however, because the unjust enrichment claim is subject to the six-year limitations period. *United States v. First Nat'l Bank of Cicero*, 957 F.2d 1362, 1371 (7th Cir.1992)

---

8. While the court does not need to resolve the question of whether DOJ qualifies as the "responsible official" under 31 U.S.C. § 3731(b)(2) to rule on the defendants' motion to dismiss, the court notes, however, that one case on point may shed some light on the matter. The district court in *Kreindler & Kreindler* determined that senior army officials in charge of a helicopter project could be "the officials charged with responsibility" to discover a cause of action. *Kreindler & Kreindler*, 985 F.2d at 1156.

(citing *United States v. Dae Rim Fishery Co.*, 794 F.2d 1392 (9th Cir.1986); *United States v. P/B STCO 213*, 756 F.2d 364, 374–76 (5th Cir.1985); *United States v. Neidorf*, 522 F.2d 916 (9th Cir.1975); *United States v. Limbs*, 524 F.2d 799 (9th Cir.1975)). To wit, if the underlying claim is a tort claim, then the tort limitations period applies. *Id.* The analysis does not end there since it must also take into account courts' decisions that allow the federal government to choose the six-year limitations period in unjust enrichment cases. *Id.* While the defendants cite *Blusal Meats, Inc. v. United States*, 638 F.Supp. 824 (S.D.N.Y.1986), which goes against this established line of precedent under section 2415, *Blusal Meats* displays no awareness or consideration of the aforementioned court of appeals' decisions on the matter. *Compare Blusal Meats*, 638 F.Supp. 824 to *Cicero*, 957 F.2d at 1371–72 (citations omitted). Notwithstanding *Blusal Meats's* failure to consider the developed line of precedent in this case, the greater weight of authority supports the court's decision applying the six-year limitations period. *Cicero*, 957 F.2d at 1371; *Dae Rim Fishery Co.*, 794 F.2d 1392; *P/B STCO 213*, 756 F.2d at 374–76; *Neidorf*, 522 F.2d 916; *Limbs*, 524 F.2d 799.

Besides, even if the defendants persuaded the court to apply the reasoning in *Blusal Meats* to the case at bar, the court would still rule against the defendants because the plaintiff's unjust enrichment claim can also qualify as quasi-contract in nature since it is based on allegations of fraud. *Id.* at 1372. Indeed, the plaintiff's complaint alleges that because of the alleged fraudulent invoices submitted by the defendants, the plaintiff paid the defendants by mistake resulting in the defendants being unjustly enriched. Compl. ¶ 34. Thus, this claim is subject to the six-year limitations period under section 2415(a). 28 U.S.C. § 2415(a); *Cicero*, 957

F.2d at 1372. The court additionally determines that the limitations period was tolled for the plaintiff's unjust enrichment claim pursuant to 28 U.S.C. § 2416(c) until the completion of the DCA audit on January 7, 1998. Counting back from the time when the plaintiff filed its complaint on April 10, 2001, it is clear that the plaintiff filed its unjust enrichment claim within the applicable six-year limitations period under 2415(a). Accordingly, the court denies the defendants' motion to dismiss on this point.

### b. Payment–by–Mistake

Parallel to their challenge of the plaintiff's unjust enrichment claim, the defendants assert that the plaintiff's payment-by-mistake claim is founded in tort and should be dismissed under the three-year limitations period rather than the six-year period applied to contract claims. Mot. to Dismiss at 10. As with the unjust enrichment claim, the court disagrees with the defendants because the payment-by-mistake claim is based on contract theories of law and subject to the six-year limitations period under section 2415(a).

The analysis of the unjust enrichment claim's viability essentially mirrors the analysis for the payment-by-mistake claim's viability. The plaintiff's complaint in this case alleges that the plaintiff paid the defendants money out of no obligation to do so. Compl. ¶ 29. As in *Cicero*, this constitutes a quasi-contract claim subject to the six-year limitations period rather than the three-year limitations period for tort claims. *Cicero*, 957 F.2d at 1372. Pursuant to 28 U.S.C. § 2416(c), the court concludes that the limitations period was tolled for the plaintiff's payment-by-mistake claim until the completion of the DCA audit on January 7, 1998. Because the plaintiff filed its complaint within six years

of the audit, the court denies the defendants' motion to dismiss this claim as well.

### c. Common–Law Fraud

■ Lastly, the defendants argue that the plaintiff's common-law fraud claim is subject to the three-year limitations period and that the court should therefore dismiss the claim as time barred. The court agrees with the defendants because this claim is founded on a tortious act. Indeed, the factual basis for the plaintiff's common-law fraud claim is that the defendants intentionally presented false documents to the plaintiff in order to obtain money. Compl. ¶ 39; *Village of Island Park*, 791 F.Supp. at 364. Accordingly, the DCA audit's completion on January 7, 1998 began the clock on the three-year limitations period under 28 U.S.C. § 2416(c) pertaining to the plaintiff's common-law fraud claim. As stated before, the plaintiff filed its complaint on April 10, 2001, two months after the statute of limitations had expired. Thus, the court dismisses the plaintiff's common-law fraud claim for all six alleged false invoices [9] and the alleged false ICS.

### IV. CONCLUSION

For the forgoing reasons, the court grants in part and denies in part the defendants' motion to dismiss. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this *2nd* day of August 2002.

---

9. The court's dismissal refers to the invoices submitted on the following dates: November 25, 1994, December 8, 1994, December 13, 1994, March 15, 1995, April 10, 1995, and September 30, 1996. Pl.'s Opp'n at 18.